LARRY W. COLEY AND JUDY B. COLEY, HIS WIFE v. CURTIS R. EUDY, SR. AND ELIZABETH W. EUDY, HIS WIFE

No. 8019SC658

(Filed 7 April 1981)

1. **Contracts § 29.2– breach of contract to assume mortgages – measure of damages**

   In an action for breach of a contract in which defendants agreed to accept plaintiffs' Rowan County home as a trade-in on a newly constructed home in Concord and to assume two mortgages on plaintiffs' Rowan County home wherein the evidence showed that defendants failed to assume the mortgages, that plaintiffs abandoned the Concord home and stopped making mortgage payments thereon, and that a mortgage on the Concord home was foreclosed, the trial court erred in instructing the jury that the measure of plaintiffs' damages was the difference between the purchase price and the fair market value of the Concord home at the time the contract was entered, since plaintiffs' actual damages were fixed by the amount of the deficiency after foreclosure of the mortgage plus other damages actually incurred by plaintiffs in their dealings with defendants, including plaintiffs' loss of equity in the Rowan County home and damages due to their payment of closing costs on the Concord home.

2. **Contracts § 24– breach of contract – liability of feme defendant**

   The *feme* defendant was liable for damages for breach of a contract since she was a party to such contract.

APPEAL by defendant, Elizabeth W. Eudy, from *Seay, Judge.* Judgment entered 26 February 1980, in Superior Court, CABARRUS County. Heard in the Court of Appeals 3 February 1981.

On 8 December 1977, plaintiffs filed a complaint against defendants Curtis R. Eudy and his wife Elizabeth W. Eudy as well as several financial lending institutions. Plaintiffs' suit against the various lending institutions was resolved either in Superior Court or in this Court, *Coley v. Bank*, 41 N.C. App. 121, 254 S.E. 2d 217 (1979), and is not the subject of this appeal.

In plaintiffs' complaint against the defendants Eudy, they set forth two causes of action. First, they alleged that the plaintiffs and defendants had entered into an agreement whereby plaintiffs were to purchase a newly constructed home of the defendants in Concord; as consideration, plaintiffs were to deed over their Rowan County home to defendants who agreed to assume two mortgages on the Rowan County home. Plaintiffs alleged that they did in fact deed the Rowan County home to

Coley v. Eudy

defendants who never intended to assume, and did not assume, the two mortgages. At the time the complaint was filed, plaintiffs had just been served with foreclosure papers on their Rowan County home. In the first cause of action, plaintiffs sought, *inter alia,* rescission of the contract to purchase the Concord home, restoration of their Rowan County home, and damages. As their second cause of action, plaintiffs alleged that defendants had expressly and impliedly warranted that the Concord home was constructed with good workmanship and good materials and that it was suitable for habitation. Further, plaintiffs alleged that the defendants breached their warranties in that the home had a faulty electrical system and that the basement of the home leaked, ruining the carpet and rendering the basement unfit for habitation. Plaintiffs sought damages for the breach of said warranties.

The *feme* defendant answered, denying plaintiffs' allegations and cross-claiming against her husband from whom she had obtained a legal separation. The *homme* defendant also answered admitting the contract between plaintiffs and defendants for the trade of the two houses and the assumption of the two loans by defendants. He also alleged that he had waterproofed the basement of plaintiffs' Concord home and installed storm windows for which plaintiffs never paid him. Plaintiffs' other allegations he denied.

At trial, which was held more than two years after the complaint was filed, the plaintiffs offered, through testimony of the *homme* plaintiff, the following evidence to which no objection was made. In February 1977, plaintiffs entered into a written Contract of Sale with defendants for the purchase of a newly constructed home in Concord. The contract price was $58,700.00. Defendants agreed to accept in trade the plaintiffs' home in Rowan County at a price of $37,500.00 and, further, to assume two mortgages totalling approximately $32,000.00; the balance of approximately $5,500.00 was to go to the plaintiffs. The Realtors Settlement Sheet, which was offered into evidence, showed that the actual balance of $5,484.42 was applied against the purchase price and closing costs of the new home. Defendants also agreed in the Contract of Sale to "fix leaks in basement and put on storm windows and doors as agreed."

Plaintiffs moved into the Concord home in May 1977 and

immediately encountered problems with the heating system, the sewage drain, and water seepage on the north wall of the house. The electrical system malfunctioned causing spoilage of frozen food in plaintiffs' freezer. The water seepage continued and ruined the carpet in the basement as well as furniture in the basement.

Within three months after plaintiffs moved into the Concord house, they began receiving statements from Concord-Kannapolis Savings and Loan advising them that the loan on the Rowan County property was in default, that plaintiffs were responsible for the payments, and that, if plaintiffs didn't resume payments, the Savings and Loan would have to foreclose. In fact, the Savings and Loan did foreclose in September 1977.

After making six mortgage payments to North Carolina National Bank (NCNB), on the Concord house, plaintiffs determined that it was not fit to live in, and they ceased making payments. NCNB foreclosed and after foreclosure the Veterans' Administration, which had guaranteed the loan, sought from the plaintiffs the balance of plaintiffs' indebtedness, $11,654.58, plus interest at four percent. The *homme* plaintiff testified that, in his opinion, the Concord house was worth about $20,000.00.

After all the evidence, the trial court submitted, with instructions, two questions to the jury:

1. Did the defendants breach the contract made in the sale of the home to the plaintiffs?

Yes_____No_____.

2. What amount, if any, are plaintiffs entitled to recover of defendants? _____

From the jury's determination that there was a breach of contract and that damages amounted to $40,000.00, the *feme* defendant appealed.

*Wesley B. Grant, by Randell F. Hastings, for plaintiff appellees.*

*Hartsell, Hartsell and Mills, by Fletcher L. Hartsell, Jr., for defendant appellant.*

ARNOLD, Judge.

Coley v. Eudy

The *feme* defendant presents two questions on this appeal. Her first argument is that the court's instructions to the jury were inaccurate, confusing and contrary to the law. For the reasons and to the extent set forth below, we agree.

[1] At the outset, we note that it appears from the record that the trial court's confusion in instructing the jury regarding plaintiffs' damages resulted from the several interrelated allegations contained in plaintiffs' complaint and from the fact that, since the complaint was filed, plaintiffs had significantly changed their position with regard to the Concord house. A comparative analysis of plaintiffs' complaint, and the evidence adduced at trial, reveals that plaintiffs' allegations as to defendants' fraud, misrepresentation, and breach of express and implied warranties were issues that were not raised by plaintiffs' evidence. This fact was correctly reflected by the issues which the trial court submitted to the jury. Defendant advances the argument that since plaintiffs' evidence did not conform to the allegations in their complaint, plaintiffs should have amended their complaint. We are unable to determine from plaintiffs' inartfully drawn complaint whether plaintiffs intended to allege simple breach of contract. That determination, however, is not essential. G.S. 1A-1, Rule 15(b) clearly states that a failure to amend pleadings to conform to the evidence does not affect the result of the trial of issues not raised by the pleadings. While we agree that it is the better practice to amend the pleadings so that they actually reflect the theory of recovery, *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E. 2d 721 (1972), failure to do so in the case before us is without real import.

In reviewing the instructions to the jury, however, we find that the trial court, while recognizing that plaintiffs' evidence supported only the breach of contract theory, defined the measure of damages in terms inconsistent with the evidence, and in a manner confusing to the jury.

Generally, a party who is injured by the breach of a contract is entitled to compensation for injuries sustained and is entitled to be placed, as near as possible, in the same position he would have occupied if the contract had been performed. *Fulcher v. Nelson*, 273 N.C. 221, 159 S.E. 2d 519 (1968). See also D. Dobbs, Handbook on the Law of Remedies, § 12.1, p. 786 (1973).

Coley v. Eudy

In breach of contract cases in which there is a failure by the contractor to construct a house in a workmanlike manner, according to plans and specifications, the damages to the non-breaching party may be measured in one of two ways: if the jury accepts evidence tending to show that the defects could readily be remedied without destruction of any part of the building, the measure of damages would be the cost of labor and materials to make the building conform to the contract; if, on the other hand, the jury accepts evidence showing that, to remedy the deficiencies, a substantial part of what had been done had to be undone, the measure of damages would be the difference in the value of the structure as contracted for and the value of the structure actually built. *Robbins v. C.W. Myers Trading Post, Inc.*, 251 N.C. 663, 111 S.E. 2d 884 (1960); *see also D. Dobbs, supra*, § 12.21, p. 897. In the cases that have followed this method for computing damages, we can find no case in which damages were assessed in this manner where, as in the case at bar, the non-breaching party elected, in effect, to abandon the premises. *See, e.g. Patrick v. Mitchell*, 44 N.C. App. 357, 260 S.E. 2d 809 (1979). For the same principle of damages resulting from breach of warranty, see also *Hartley v. Ballou*, 286 N.C. 51, 209 S.E. 2d 776 (1974), and authorities cited therein. However, such damages under those circumstances may be patently inappropriate.

In the case at bar, the trial court stated:

In this matter the Parties Plaintiff, the Coleys, are entitled to the difference between the fair market price at the time the contract was entered into between the parties and when the parties realized that the contract had been breached, that is, the difference, the fair market value of the premises as compared to the initial purchase price as being the price set forth and fixed by the contract.

Under the facts of this case, these instructions, allowing plaintiffs to recover as damages the difference between plaintiffs' cost and the fair market value, were erroneous. The uncontroverted evidence shows that plaintiffs stopped making mortgage payments on the Concord home; NCNB foreclosed, and, after the foreclosure sale, plaintiffs found themselves indebted to VA for $11,654.58. While the record does not necessarily reflect the exact amount obtained at the foreclosure sale, it would appear that plaintiffs' actual damages were fixed by the de-

Coley v. Eudy

ficiency after foreclosure, plus any other damages actually incurred by plaintiffs in their dealings with defendants. In this case there was ample evidence to support such damages.

The *homme* plaintiff testified concerning plaintiffs' loss of equity in the Rowan County home, the debt they owed to the Veterans Administration due to the Concord home foreclosure, and damages due to their payment of closing costs on the Concord home. Moreover, Plaintiffs' Exhibit No. 13 listed the foregoing alleged damages and revealed a total of $19,631.84, less than one-half the damages awarded by the jury. We conclude, therefore, that, in awarding damages, the jury was misled by the instruction quoted above. We hold that the defendants are entitled to a new trial on the issue of damages.

[2] The *feme* defendant's second assignment of error, that the judgment as against her was unsupported by competent evidence, is without merit. While we agree with the *feme* defendant that there was no evidence to support the theory of implied and express warranties, we have noted above that the case eventually was tried on a breach of contract theory. The *feme* defendant was a party to the contract, and she is liable for damages caused by the breach of that contract.

For the reasons stated above, the *feme* defendant is entitled to a new trial on the issue of damages.

It is so ordered.

New trial.

Judges WELLS and HILL concur.