LAKE MARY LIMITED PARTNERSHIP, Plaintiff v. HUGH W. JOHNSTON and
AUDREY S. JOHNSTON, Defendants

No. COA00-837

(Filed 21 August 2001)

## 1. Conversion— sale of shopping center—deposit of rental checks—unauthorized assumption of right of ownership

The trial court did not err by granting plaintiff's motion for a directed verdict on a conversion claim arising out of the sale of a shopping center when defendant husband intentionally deposited rental checks belonging to plaintiff after plaintiff purchased all of defendants' right, title, and interest in all leases on the pertinent property, because: (1) defendant's conduct shows an unauthorized assumption of the right of ownership over checks to which another was entitled; and (2) interest was appropriately awarded from the date each check was converted when the trial court directed verdicts in favor of plaintiff for breach of contract and conversion, N.C.G.S. § 24-5(a).

## 2. Unfair Trade Practices— sale of shopping center—taking of tenant rent checks—inequitable assertion of power and position

The trial court did not err by granting plaintiff's motion for a directed verdict on an unfair and deceptive practices claim under N.C.G.S. § 75-1.1 arising out of the sale of a shopping center when defendant husband intentionally deposited rental checks belonging to plaintiff after plaintiff purchased all of defendants' right, title, and interest in all leases on the pertinent property, because: (1) defendant engaged in deceptive activity when he breached the contract with plaintiff by retaining tenant rent checks intended

for plaintiff, knowing that plaintiff owed defendant nothing at the time, and defendant never notified the tenants to stop sending him the rent checks; (2) defendant continued to use the name and letterhead for the pertinent property after closing; and (3) defendant admittedly kept the checks to secure the performance of future contractual obligations by plaintiff, which amounted to an inequitable assertion of his power and position.

**3. Vendor and Purchaser— sale of shopping center–tax reimbursements—method of calculation**

The trial court did not err by ruling as a matter of law that plaintiff's calculation of tax reimbursements arising out of the sale of a shopping center was reasonable and plaintiff was not obligated to follow the method previously used by defendants, because the parties' contract was silent and imposed no obligation as to how tax reimbursements were to be calculated, nor did it state that plaintiff had to follow defendants' method of calculation.

**4. Vendor and Purchaser— sale of shopping center—closing date—entitlement to rental payments**

The trial court did not err by ruling as a matter of law that the closing of the sale of a shopping center took place on 31 October 1997 and defendants were not entitled to any rental payments after that date, because plaintiff moved that the pleadings be amended to conform to the evidence, the trial court allowed the claim, and defendants failed to show any abuse of discretion by the court.

**5. Vendor and Purchaser— sale of real property–breach of contract—motion for directed verdict**

The trial court did not err by denying plaintiff purchaser's motion for a directed verdict on defendant sellers' breach of contract claims arising out of the sale of a shopping center, because there was more than a scintilla of evidence supporting each element of the claim when: (1) plaintiff admits that after the closing, it did not attempt to collect charges relating to the period defendants owned the pertinent property as required by the contract; (2) plaintiff admits it was unable to meet the tax reimbursements schedule and did not bill the tenants in a timely manner; and (3) the issue of whether plaintiff's actions constituted a breach of the agreement and whether the alleged breach was material were issues of fact to be determined by the jury.

LAKE MARY LTD. PART. v. JOHNSTON

[145 N.C. App. 525 (2001)]

## 6. Husband and Wife— sale of shopping center–breach of contract—agency of husband for wife

The trial court erred by granting a directed verdict in favor of defendant wife as to plaintiff's breach of contract claim arising out of the sale of a shopping center, because defendant was receiving a benefit from the contract, and her husband was acting as her agent when he negotiated the contract.

## 7. Unfair Trade Practices— sale of shopping center—agency of husband for wife

The trial court erred by granting a directed verdict in favor of defendant wife as to plaintiff's unfair and deceptive practices claim arising out of the sale of a shopping center, because: (1) a wife who commits no acts of misrepresentation or fraud in a real estate transaction can be held liable on a plaintiff's claim for unfair and deceptive trade practices for acts of her husband determined to be her agent; and (2) there was sufficient evidence from which the jury could infer that defendant's husband acted as the agent of his wife.

## 8. Conversion— sale of shopping center—husband not agent for wife

The trial court did not err by granting a directed verdict in favor of defendant wife as to plaintiff's conversion claim arising out of the sale of real property, based on the fact that a husband is not the agent of his wife merely because of the marital relationship, and neither a husband or wife is ordinarily responsible for the torts of the other.

## 9. Setoff and Recoupment— sale of shopping center—counterclaims—single net judgment—abuse of discretion standard

The trial court did not err by failing to grant plaintiff's request to treat defendants' counterclaims arising out of the sale of a shopping center as setoffs to the claims of plaintiff and by not entering a single net judgment, because: (1) N.C.G.S. § 1A-1, Rule 13(c) provides that a counterclaim may or may not diminish or defeat the recovery sought by the opposing party; (2) the mere fact that mutual judgments exist generally does not entitle a party to have one set off against the other as a matter of right; and (3) plaintiff has failed to show any abuse of discretion by the trial court in not ordering a setoff.

**10. Costs— attorney fees—contract for sale of shopping center**

The trial court did not err by denying plaintiff's motion for attorney fees even though the parties provided in their purchase and sale agreement arising out of the sale of a shopping center that the party prevailing in a suit to enforce the agreement is entitled to recover reasonable attorney fees, because: (1) contractual provisions in North Carolina for attorney fees are invalid in the absence of statutory authority; (2) there is no basis in North Carolina law for the allowance of attorney fees in a dispute arising out of a contract for the sale of real property; and (3) plaintiff has failed to show an abuse of discretion by the trial court in failing to award attorney fees under N.C.G.S. § 75-16.1.

Appeal by plaintiff and defendants from judgment entered 17 November 1999 by Judge Raymond A. Warren in Gaston County Superior Court. Heard in the Court of Appeals 17 May 2001.

> *Tuggle Duggins & Meschan, P.A., by Kenneth J. Gumbiner, J. Reed Johnston, Jr. and Amanda L. Fields, for plaintiff-appellant.*

> *Poyner & Spruill, L.L.P., by Parmele Calame and Cecil Harrison; James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr. and Fred B. Monroe, for defendant-appellants.*

HUNTER, Judge.

Plaintiff Lake Mary Limited Partnership ("Lake Mary"), and defendants Hugh and Audrey Johnston (hereinafter, collectively "the Johnstons") appeal from the trial court's judgment on Lake Mary's breach of contract, conversion, and unfair and deceptive practices claims against the Johnstons, on the Johnstons' breach of contract counterclaim against Lake Mary, and denying both parties' motions for attorney fees. After a careful review of the record, briefs, and argument of counsel, we affirm the judgment in part; and we reverse and remand in part as to the directed verdict in Audrey Johnston's favor barring Lake Mary's claims of breach of contract and unfair and deceptive practices against her.

This matter arises out of Hugh and Audrey Johnstons' (husband and wife, respectively) sale of Dixie Village Shopping Center ("Dixie Village"), located in Gastonia, North Carolina, to Equity Investment Group, L.L.C. ("Equity"). On 12 August 1997, the parties entered into

a purchase and sale agreement, whereby the Johnstons agreed to sell Dixie Village for $6,250,000.00 (later reduced to $6,080,000.00) to Equity, which subsequently transferred its contractual rights to Lake Mary. Thereafter, on 31 October 1997, the closing on Dixie Village took place at the Johnstons' attorney's office. Pursuant to the purchase and sale agreement, the Johnstons had the obligation at closing to deliver to Lake Mary "[e]xecuted copies of a notice to tenants relating to the Assignment of Leases to [Lake Mary] and a general direction relating to the payment of rent . . . ." However, the Johnstons did not provide the tenant notice letter.

At approximately 3:00 p.m. on 31 October, the parties came to a final agreement, and Lake Mary notified Commonwealth Land Title Company of North Carolina—the company handling all the title work and document recording for Dixie Village—to disburse $1,250,000.00 to the Johnstons' attorney's trust account. Since the funds were not transferred before 2:00 p.m., the funds could not be credited to the Johnstons' attorney's trust account until the next business day, 3 November 1997. On 3 November, the Johnstons' attorney withdrew the $1,250,000.00 from his trust account and issued checks to the Johnstons for $450,000.00 and $800,000.00.

After the closing on the property, Hugh Johnston became concerned that Lake Mary would not fulfill its post-closing obligations. Thus, he kept November, December, and January rent checks that he received from the tenants of Dixie Village. In all, Hugh Johnston kept thirty-two tenant rent checks, totaling approximately $96,624.16, and he deposited these checks into an account that he previously used for Dixie Village business (Hugh Johnston transferred the funds to his attorney to hold in trust; however, his attorney later returned the funds back to him). As a result of Hugh Johnston's taking of the tenant rent checks, Lake Mary refused to fulfill some of its post-closing obligations under the purchase and sale agreement, including (1) reimbursing the Johnstons for overage rent (several Dixie Village tenants had leases which computed a portion of their rent obligation to a percentage of sales) for Dixie Village tenants Goodwill and Radio Shack, (2) billing and collecting tax reimbursements from Dixie Village tenants and reimbursing the Johnstons, and (3) billing and collecting common area maintenance (CAM) charges (a pro-rata share of the expenses incurred by the landlord in maintaining the shopping center) from Dixie Village tenants and forwarding them to the Johnstons.

On 4 March 1998, Lake Mary instituted this action against the Johnstons alleging conversion, breach of contract, and unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1 (1999), arising from the retention of the tenant rent checks, failure to provide the tenant notice letter, and use of the Dixie Village name and letterhead after closing. Subsequently, the Johnstons answered, and asserted a counterclaim for breach of contract, *inter alia*, against Lake Mary, arising from its failure to fulfill its post-closing obligations.

At the conclusion of all the evidence at trial, upon the motion of the parties, the trial court (1) granted a directed verdict in favor of Audrey Johnston and against Lake Mary as to its breach of contract, conversion, and unfair and deceptive practices claims arising from the retention of tenant rent checks, (2) granted a directed verdict in favor of Lake Mary and against Hugh Johnston for conversion, breach of contract, and unfair and deceptive practices arising from the retention of tenant rent checks, (3) awarded Lake Mary $96,624.16 in compensatory damages from Hugh Johnston, with interest to run from the date the checks were deposited or converted, for his conversion and breach of contract, and (4) granted a directed verdict in favor of Lake Mary and against Hugh Johnston for breach of contract arising from his use of the Dixie Village name and letterhead after closing. Additionally, the trial court ruled as a matter of law that (1) the method used by Lake Mary to calculate the pro-rata share of taxes due from each tenant was acceptable under the contract, (2) the closing of the sale of Dixie Village took place on 31 October 1997, and the Johnstons were not entitled to any rental payments after that date, (3) the Johnstons were entitled to judgment in the amount of $1,086.00 plus interest for overage rent collected from Dixie Village tenant Radio Shack, and (4) the Johnstons were due a tax refund for overpayment of property taxes from Lake Mary in the amount of $3,855.46 plus interest.

After issuing its directed verdicts and various rulings, the trial court submitted nine issues to the jury. Then, after the jury returned with its verdict, the trial court, based on its directed verdict rulings, rulings as a matter of law, and the jury's verdict, entered judgment (1) in favor of Lake Mary and against the Johnstons, jointly and severally, in the amount of $5,100.00 plus interest for breach of contract arising from their failure to provide a tenant notice letter to Lake Mary at closing, (2) in favor of Lake Mary and against Hugh Johnston in the amount of $289,875.48 ($96,625.16 trebled as per N.C. Gen. Stat. § 75-16 (1999)) plus interest for his unfair and deceptive practices, (3)

in favor of the Johnstons and against Lake Mary in the amount of $68,224.70 ($52,123.94 for failure to bill and collect tax reimbursements; $6,144.64 for failure to bill, collect, and forward CAM charges; $5,014.10 for overage rent for Goodwill; $3,855.46 tax refund for overpayment of property taxes; $1,086.00 for overage rent for Radio Shack; and $1.00 for Hugh Johnston's use of the Dixie Village name) plus interest for Lake Mary's breach of contract, and (4) denying both parties' motions for attorney fees. All of the parties subsequently moved for a judgment notwithstanding the verdict (JNOV), which motions were denied by the trial court. Both Lake Mary and the Johnstons now appeal.

In the Johnstons' first and second assignments of error, Hugh Johnston contends that the trial court committed reversible error by granting Lake Mary's motion for a directed verdict for conversion and unfair and deceptive practices against him. We disagree.

It is well-settled that:

> A motion for directed verdict tests the sufficiency of the evidence to take the case to the jury. In making its determination of whether to grant the motion, the trial court must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence. . . .

*Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993) (citations omitted). "A directed verdict is properly granted where it appears, as a matter of law, that the nonmoving party cannot recover upon any view of the facts which the evidence reasonably tends to establish." *Beam v. Kerlee*, 120 N.C. App. 203, 210, 461 S.E.2d 911, 917 (1995). Likewise, "[a] JNOV motion constitutes renewal of an earlier motion for directed verdict, and similarly tests the legal sufficiency of the evidence to take the case to the jury." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). "[T]he test for determining sufficiency of the evidence is the same under both motions." *Id.*

[1] First, Hugh Johnston challenges the trial court's grant of a directed verdict against him for conversion. "The tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d

351, 353 (1956) (quoting 89 C.J.S., Trover & Conversion, sec. 1). Moreover:

> "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act." 89 C.J.S. Trover and Conversion § 3, pp. 533-34. "[T]he general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property." 18 Am. Jur. 2d, Conversion, § 1, p. 158. It is clear then that two essential elements are necessary in a complaint for conversion—there must be ownership in the plaintiff and a wrongful conversion by defendant. *Wall v. Colvard, Inc.*, [268 N.C. 43, 149 S.E.2d 559 (1966)]; *Vinson v. Knight*, 137 N.C. 408, 49 S.E. 891 (1905).

*Gallimore v. Sink*, 27 N.C. App. 65, 67, 218 S.E.2d 181, 183 (1975).

In the present case, according to the purchase and sale agreement, Lake Mary purchased all of the Johnstons' "right, title and interest in and to all leases . . . affecting the Property," which would necessarily include the right to all tenant rent checks received after the closing date. Thereafter, Hugh Johnston intentionally deposited checks received from Dixie Village tenants, for their November, December, and January rents, into an account that he previously used for Dixie Village business. Hugh Johnston admitted that these rent checks belonged to Lake Mary, thus, he had no ownership interest in them. The evidence further shows that Hugh Johnston had an obligation to forward these checks to Lake Mary. Consequently, we conclude that Hugh Johnston's conduct shows an unauthorized assumption of the right of ownership over checks to which another was entitled sufficient to support the trial court's directed verdict against him for conversion.

Incidentally, Hugh Johnston, relying on N.C. Gen. Stat. § 24-5(b) (1999), argues that the trial court erred in awarding interest from the date each check was "converted," as opposed to the date the complaint was filed. However, the trial court directed verdicts against Hugh Johnston for *breach of contract* and conversion arising from his retention of the rent checks. Pursuant to N.C. Gen. Stat. § 24-5(a), "[i]n an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." Here, the breach occurred on the dates that Hugh Johnston deposited or

converted each check. Therefore, Hugh Johnston's argument is without merit.

**[2]** Secondly, Hugh Johnston contends the trial court erred in granting a directed verdict against him for unfair and deceptive practices, in violation of N.C. Gen. Stat. § 75-1.1. "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Furthermore, "[a] practice is deceptive if it 'possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception.'" *Poor v. Hill*, 138 N.C. App. 19, 28-29, 530 S.E.2d 838, 845 (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981)). "A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Johnson v. Insurance Co.*, 300 N.C. 247, 264, 266 S.E.2d 610, 622 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Generally, "whether a practice is unfair or deceptive is . . . dependent upon the facts of each case." *Moretz v. Miller*, 126 N.C. App. 514, 518, 486 S.E.2d 85, 88 (1997). Ultimately, "[t]he determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." *Gray*, 352 N.C. 61, 68, 529 S.E.2d 676, 681.

"[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). Moreover, actions for unfair or deceptive practices are ordinarily distinct from actions for breach of contract. *See Boyd v. Drum*, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998), *affirmed*, 350 N.C. 90, 511 S.E.2d 304 (1999). However, aggravating circumstances can elevate a breach of contract into an unfair and deceptive practice if the conduct of the breaching party is deceptive. *See Poor*, 138 N.C. App. 19, 28, 530 S.E.2d 838, 844-45.

Viewing the evidence in the light most favorable to Hugh Johnston, the evidence in this case is sufficient to support an unfair

and deceptive practices claim. First and foremost, Hugh Johnston engaged in deceptive activity. He breached the contract with Lake Mary by retaining tenant rent checks intended for Lake Mary, knowing that Lake Mary owed him nothing at the time; he never notified the Dixie Village tenants to stop sending him the rent checks; and he continued to use the Dixie Village name and letterhead after closing. Second, Hugh Johnston admittedly kept the checks to secure the performance of future contractual obligations by Lake Mary, which amounted to an inequitable assertion of his power and position. We note that Hugh Johnston contends that he retained the checks in good faith; however, "[g]ood faith is not a defense to an alleged violation of N.C.G.S. § 75-1.1." *Gray*, 352 N.C. 61, 68, 529 S.E.2d 676, 681. Thus, the trial court did not err in granting a directed verdict against Hugh Johnston for his unfair and deceptive practices. Accordingly, we find no error in the trial court's directed verdicts against Hugh Johnston arising from his taking of the tenant rent checks.

Next, the Johnstons assign error to two of the trial court's rulings associated with its granting of the directed verdicts. Specifically, the Johnstons contend that the trial court erred in ruling as a matter of law that (1) Lake Mary's calculation of tax reimbursements was reasonable and Lake Mary was not obligated to follow the method previously used by the Johnstons, and (2) the closing of the sale of Dixie Village took place on 31 October 1997, and the Johnstons were not entitled to any rental payments after that date. Again, we disagree with the Johnstons' argument.

[3] First, the Johnstons argue that under the contract Lake Mary was obligated to follow the Johnstons' previous method of billing tenants for tax reimbursements. "The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209, *disc. review denied*, 351 N.C. 186, 541 S.E.2d 709 (1999). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). After a careful review of the purchase and sale agreement, we find that the contract was silent and imposed no obligation as to how tax reimbursements were to be calculated, or that Lake Mary had to follow the Johnstons' method of calculation. Viewing the evidence in the light most favorable to the Johnstons, competent evidence of record supports the trial court's ruling "as a matter of law that the method

used by [Lake Mary] to calculate the prorata share of taxes due from each tenant was acceptable under the contract between the parties and the prevailing law."

**[4]** Second, the Johnstons argue that the trial court erred in determining that they were not entitled to an additional one-day rent proration for 31 October 1997. At closing, rent was prorated with Lake Mary receiving credit for one-day's rent, 31 October. Thereafter, in its complaint, Lake Mary alleged that the Johnstons were entitled to rent for the entire month of October. Then, at the conclusion of all of the evidence in the trial, the Johnstons argued that they were entitled to the rent for 31 October, claiming judicial admission by Lake Mary. As a result, Lake Mary moved that the pleadings be amended to conform to the evidence, and the trial court allowed the claim and denied the Johnstons' request.

"Whether a motion to amend a pleading is allowed or denied is addressed to the sound discretion of the trial court and is accorded great deference." *North River Ins. Co. v. Young*, 117 N.C. App. 663, 670, 453 S.E.2d 205, 210 (1995). "While such amendment of pleadings may be made, even late in the trial or after judgment, in order to conform the pleadings to the evidence . . . the trial court's ruling upon such a motion is not reviewable absent an abuse of discretion." *Mosley & Mosley Builders v. Landin, Ltd.*, 87 N.C. App. 438, 447, 361 S.E.2d 608, 614 (1987). Evidence of record supports the trial court's ruling, and the Johnstons have failed to show any abuse of discretion by the court. Thus, we find no error in the trial court's ruling "as a matter of law that the closing of the sale of the Dixie Village Shopping Center took place on October 31, 1997 and that the [Johnstons] were not entitled to any rental payments after that date." In sum, after viewing all of the evidence in the light most favorable to the Johnstons, we hold that competent evidence of record supports each of the trial court's rulings associated with its grants of directed verdicts. Hence, this assignment is overruled.

Finally, as to the Johnstons' fourth, fifth, seventh, eighth, and ninth assignments of error in their brief, they have failed to cite any legal authority for their arguments. Where a party fails to cite any authority in his brief in support of his argument, the assignment of error upon which that argument is based will be deemed abandoned. N.C.R. App. P. 28(b)(5); *see also State v. Thompson*, 110 N.C. App. 217, 429 S.E.2d 590 (1993). Nevertheless, having reviewed these arguments, we find no merit in the Johnstons' assignments.

**[5]** Now, we turn to Lake Mary's cross-appeal. Under its first assignment of error, Lake Mary contends that the trial court committed reversible error by denying its motion for a directed verdict as to the Johnstons' breach of contract claims against it. We disagree.

We note that, "[i]f there is more than a scintilla of evidence supporting each element of the non-movant's claim, the motion [for a directed verdict or JNOV] should be denied." *Poor*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843; *see also Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825. "Where the question of granting a directed verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843.

In this case, the purchase and sale agreement provided that:

All *rents*, income, utilities and *all other operating expenses* with respect to the Property . . . and real estate and personal property taxes and other assessments with respect to the Property . . . shall be prorated as of the date of Closing. . . . Subsequent to the Closing, if any *rents* for the month of closing, or for prior rental periods, are actually received by [Lake Mary], immediately upon its receipt of such rents, [Lake Mary] shall pay to the [Johnstons] its proportionate share thereof for such month. [Lake Mary] shall make a good faith effort and attempt to collect any such rents not apportioned at the Closing, for the benefit of [the Johnstons] but [Lake Mary] shall not be required to bring suit, default a tenant or incur expenses in connection therewith. Tax reimbursement amounts and other reimbursables, *common area maintenance charges* and percentage rents shall be prorated as of the closing date for the applicable periods and adjusted between the parties when received.

(Emphasis added.) Additionally, Dixie Village tenant leases specifically categorized CAM charges as rents. It is undisputed that Lake Mary failed to meet these obligations. In fact, as to the CAM charges, Lake Mary admits in its brief that "[a]fter the closing, [it] did not attempt to collect, and did not collect, CAM charges relating to the period the Johnstons owned Dixie Village." Then as to the tax reimbursements, Lake Mary admits it "was unable to meet this schedule

and did not bill the tenants until early January and did not collect most of the reimbursements until February." Thus, there was more than a scintilla of evidence supporting each element of the Johnstons' breach of contract claim, and the motion for a directed verdict and JNOV were properly denied.

However, Lake Mary argues that since the Johnstons materially breached the contract, it was legally excused from performing any subsequent duties under the contract.

> The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further. . . .

> Failure to perform an independent promise does not excuse nonperformance on the part of the other party. . . .

*Coleman v. Shirlen*, 53 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981). Whether Lake Mary's actions in the present case constituted a breach of the agreement, and whether the alleged breach was material, was an issue of fact that should have been determined by the jury. *See id.* Hence, the trial court did not err in denying Lake Mary's motion for a directed verdict on the Johnstons' breach of contract claim, and properly submitted the issue to the jury for determination.

In its next assignment of error, Lake Mary contends that the trial court committed reversible error by granting a directed verdict in Audrey Johnston's favor as to Lake Mary's breach of contract, conversion, and unfair and deceptive practices claims arising from the retention of tenant rent checks. After a careful review, we find no error in the trial court's directed verdict as to conversion; however, we reverse as to breach of contract and unfair and deceptive practices.

Again, "[a] directed verdict is properly granted where it appears, as a matter of law, that the nonmoving party cannot recover upon any view of the facts which the evidence reasonably tends to establish." *Beam v. Kerlee*, 120 N.C. App. 203, 210, 461 S.E.2d 911, 917. Here, Dixie Village was owned by Hugh and Audrey Johnston, husband and wife, as tenants in the entireties. The evidence further showed that Audrey Johnston attended the closing for Dixie Village; she was a party to the contract, evidenced by her signing the purchase and sale agreement; she received benefits under the contract (the purchase

price was used to discharge the debts of both her and her husband on jointly held property); she sued Lake Mary for breach of contract; she recovered for breach of contract pursuant to the trial court's judgment; and Hugh Johnston retained the tenant rent checks, in violation of the purchase and sale agreement, and placed them in a checking account previously used for Dixie Village business.

"No presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife. There must be proof of the agency." *Air Conditioning Co. v. Douglass*, 241 N.C. 170, 173, 84 S.E.2d 828, 831 (1954). Nevertheless, "agency of the husband for his wife may be 'shown by evidence of facts and circumstances which authorize a reasonable inference that he was authorized to act for her.' " *Douglas v. Doub*, 95 N.C. App. 505, 513, 383 S.E.2d 423, 427 (1989) (quoting *Passmore v. Woodard*, 37 N.C. App. 535, 540, 246 S.E.2d 795, 800 (1978)).

[6] Regarding Lake Mary's breach of contract claim against Audrey Johnston, "[a] wife's retention of benefits from a contract negotiated by the husband is a factual circumstance giving rise to an inference that the husband was authorized to act for her under the contract." *Camp v. Leonard*, 133 N.C. App. 554, 558, 515 S.E.2d 909, 912 (1999). "Only ' "slight evidence of the agency of the husband for the wife is sufficient to charge her where she receives, retains, and enjoys the benefit of the contract[]" ' negotiated by her husband." *Boyd v. Drum*, 129 N.C. App. 586, 591, 501 S.E.2d 91, 96 (quoting *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964)). If a wife "was a party to the contract, . . . she is liable for damages caused by the breach of that contract." *Coley v. Eudy*, 51 N.C. App. 310, 315, 276 S.E.2d 462, 466 (1981). Thus, as the evidence tended to show that Audrey Johnston, wife, was receiving a benefit from the contract and Hugh Johnston, husband, was acting as her agent, the trial court's directed verdict in favor of Audrey Johnston as to breach of contract was improper.

[7] Likewise, as to Lake Mary's unfair and deceptive practices claim against Audrey Johnston, a wife who commits no acts of misrepresentation or fraud in a real estate transaction can be held liable on a plaintiff's claims for unfair and deceptive practices for acts of her husband determined to be her agent. *See Lee v. Keck*, 68 N.C. App. 320, 324-25, 315 S.E.2d 323, 327 (1984); *see also Poor v. Hill, supra.* Moreover, in an unfair and deceptive practices action,

LAKE MARY LTD. PART. v. JOHNSTON

[145 N.C. App. 525 (2001)]

[w]here evidence of an agency relationship has been presented, agency becomes a fact to be proved and a question for the jury . . . and a directed verdict would be proper only if "there [wa]s no evidence presented tending to establish an agency relationship," *Smith v. VonCannon*, 17 N.C. App. 438, 439, 194 S.E.2d 362, 363, *aff'd*, 283 N.C. 656, 197 S.E.2d 524 (1973).

*Poor*, 138 N.C. App. at 31-32, 530 S.E.2d at 846.

Since there was sufficient evidence from which the jury could infer that Hugh Johnston, husband, acted as the agent of Audrey Johnston, wife, the trial court should not have granted a directed verdict on the unfair and deceptive practices claim. While Audrey Johnston claims that she had no knowledge of her husband's actions regarding the tenant rent checks, "[t]he fact that the 'principal did not know or authorize the commission of the fraudulent acts' is immaterial." *Douglas v. Doub*, 95 N.C. App. 505, 513, 383 S.E.2d 423, 427 (quoting *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284). Accordingly, we reverse the trial court's entry of directed verdicts in favor of Audrey Johnston on Lake Mary's breach of contract and unfair and deceptive practices claims.

[8] Conversely, we note that conversion is a tort. "A husband is not the agent of his wife merely because of the marital relationship and neither a husband or wife is ordinarily responsible for the torts of the other." *Shoe v. Hood*, 251 N.C. 719, 724, 112 S.E.2d 543, 548 (1960); see also N.C. Gen. Stat. § 52-12 (1999) ("[n]o married person shall be liable for damages accruing from any tort committed by his or her spouse"). In light of *Shoe* and § 52-12, the trial court's directed verdict in Audrey Johnston's favor as to conversion was properly granted.

[9] Next, Lake Mary assigns error to the trial court's failure to enter a set off or net judgment. Particularly, Lake Mary argues that the trial court erred in not granting its request to treat the claims of the Johnstons as set offs to the claims of Lake Mary, and by not entering a single net judgment. However, we find no error.

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 13(c) (1999), "[a] counterclaim may or *may not* diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." (Emphasis added.) "[T]he rule permits a court to set off judgments by way of claim and counterclaim against each other so that only a net recovery accrues to the prevailing party." 1 G. Gray Wilson, *North*

*Carolina Civil Procedure* § 13-7, at 266 (2d ed. 1995). However, "[t]he mere fact that mutual judgments exist generally does not entitle a party to have one set off against the other as a matter of right." 47 Am. Jur. 2d *Judgments* § 1031 (1995). In fact:

> The trial court's jurisdiction to set off one judgment against another is equitable in nature and should be exercised when necessary to provide justice between the parties. A set-off is not necessarily founded upon any statute or fixed rule of court, but grows out of the inherent equitable jurisdiction of the court. Therefore, such motions are addressed to the discretion of the court—a discretion which should not be arbitrarily or capriciously exercised.

*Welch v. Epstein*, 342 S.C. 279, 313, 536 S.E.2d 408, 425-26 (2000) (citations omitted). Lake Mary has failed to show any abuse of discretion by the trial court in not ordering a set off, therefore, we find no error in the trial court's judgment.

**[10]** Finally, Lake Mary assigns error to the trial court's denial of its motion for attorney fees. Nonetheless, we affirm the trial court's ruling.

In the present action, the parties provided in the purchase and sale agreement that "[i]n the event it becomes necessary for either party . . . to file suit to enforce [the] Agreement or any provision contained [t]herein, the party prevailing in such suit shall be entitled to recover . . . reasonable attorneys' fees . . . ." Then, at the conclusion of the trial, Lake Mary made a motion for attorney fees pursuant to the contract and N.C. Gen. Stat. § 75-16.1 (1999). Ultimately, the trial court denied the motion.

In North Carolina, " '[a]s a general rule[,] contractual provisions for attorney's fees are invalid in the absence of statutory authority. This is a principle that has long been settled in North Carolina and fully reviewed by our Supreme Court . . . .' " *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 167, 510 S.E.2d 690, 695, *disc. review denied and dismissed*, 350 N.C. 379, 536 S.E.2d 70 (1999) (quoting *Forsyth Municipal ABC Board v. Folds*, 117 N.C. App. 232, 238, 450 S.E.2d 498, 502 (1994)); *see also Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.*, 143 N.C. App. 1, 11-12, 545 S.E.2d 745, 752 (2001).

Therefore, based on the law of this state, the contractual provision alone is insufficient to allow the awarding of attorney fees. In

fact, "we know of no basis in North Carolina law for the allowance of attorney's fees in a dispute arising out of a contract for the sale of real property, as is involved in this case." *Forsyth Municipal ABC Board v. Folds,* 117 N.C. App. 232, 238, 450 S.E.2d 498, 502. Nevertheless, § 75-16.1 provides statutory authority for attorney fees under an unfair and deceptive practices claim. However, "[a]ward or denial of attorney fees under [§] 75-16.1 is a matter within the sole discretion of the trial judge." *Morris v. Bailey,* 86 N.C. App. 378, 387, 358 S.E.2d 120, 125 (1987). Again, Lake Mary has failed to show any abuse of discretion by the trial court, thus we conclude the trial court denied the motion for attorney fees within its discretion. Hence, this assignment is rejected.

In the record, the Johnstons and Lake Mary preserve additional assignments of error. However, as they fail to argue them in their briefs, we deem those not argued abandoned. N.C.R. App. P. 28(b)(5).

In sum, we affirm the trial court's rulings as against Hugh Johnston and Lake Mary; however, we reverse the trial court's directed verdicts in favor of Audrey Johnston for breach of contract and unfair and deceptive practices arising from the retention of the tenant rent checks and remand for a new trial on those claims.

Affirmed in part; reversed and remanded in part.

Judges MARTIN and JOHN concur.