JACKIE L. ELEY, PLAINTIFF V. MID/EAST ACCEPTANCE CORPORATION
OF N.C., INC., DEFENDANT

No. COA04-790

(Filed 5 July 2005)

### 1. Conversion— watermelons on repossessed truck—time to unload—evidence and findings

A finding that plaintiff was not allowed a reasonable time to unload 130 watermelons from a truck that was being repossessed was supported by competent evidence in the bench trial for conversion of those watermelons.

### 2. Conversion— watermelons on repossessed truck—assumption of ownership

The findings in a bench trial for conversion of watermelons left in the sun on a repossessed truck supported the inference that defendant assumed and exercised the right of ownership over plaintiff's watermelons without her permission when repossessing her truck, to the exclusion of plaintiff's rightful ownership interest.

### 3. Unfair Trade Practices— watermelons on repossessed truck—opportunity to unload

The denial of any meaningful opportunity for plaintiff to remove watermelons from her repossessed truck supported the conclusion that defendant had committed an unfair and deceptive trade practice.

### 4. Damages— oral testimony—value of converted watermelons

Plaintiff's testimony about what she paid for her watermelons was sufficient to support the court's calculation of her damages in an action for conversion of watermelons.

### 5. Costs— attorney fees—appeal

Plaintiff was entitled to attorney fees on appeal because she was entitled to attorney fees under Chapter 75 in winning a judgment at the trial level; however, the award was remanded for a determination of the hours spent on appeal and entry of a reasonable hourly rate.

**ELEY v. MID/EAST ACCEPTANCE CORP. OF N.C.**

[171 N.C. App. 368 (2005)]

Appeal by defendant from order entered 12 November 2003 by Judge W. Rob Lewis, II, in Hertford County District Court. Heard in the Court of Appeals 2 February 2005.

*Janet B. Dudley for plaintiff-appellee.*

*William F. Hill, P.A., by William F. Hill and Mary C. Higgins, for defendant-appellant.*

GEER, Judge.

Defendant Mid/East Acceptance Corporation of N.C., Inc. appeals from an order entered in favor of plaintiff Jackie L. Eley following a bench trial in Hertford County District Court. Plaintiff's claims for conversion and unfair and deceptive trade practices were based on defendant's otherwise lawful repossession of plaintiff's truck, which contained a load of watermelons belonging to plaintiff. After defendant caused plaintiff's truck to be repossessed, the melons, which were still in the truck bed, quickly spoiled in the summer heat, rendering them valueless. On appeal, defendant argues that it is not liable for conversion because it did not engage in the unauthorized assumption and exercise of the right of ownership over plaintiff's watermelons to the exclusion of plaintiff's rights. It also argues that it did not commit an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1 (2003). Because we find that competent evidence exists to support the trial court's findings of fact and those findings are sufficient to establish conversion and unfair and deceptive trade practices, we affirm.

―――――――

" 'It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " *Keel v. Private Bus., Inc.*, 163 N.C. App. 703, 707, 594 S.E.2d 796, 799 (2004) (quoting *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)). Upon a finding of such competent evidence, this Court is bound by the trial court's findings of fact even if there is also other evidence in the record that would sustain findings to the contrary. *Hensgen v. Hensgen*, 53 N.C. App. 331, 335, 280 S.E.2d 766, 769 (1981). Competent evidence is evidence "that a reasonable mind might accept as adequate to support the finding." *Andrews v. Fulcher Tire Sales & Serv.*, 120 N.C. App. 602, 605, 463 S.E.2d 425, 427 (1995). The trial court's conclusions of law, by con-

trast, are reviewable *de novo. Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000).

## Facts

Plaintiff's evidence tended to show the following. Plaintiff was the owner of a 1995 Ford F150 pick-up truck that she had purchased through a loan from defendant, using the truck as collateral. In the summer of 2002, plaintiff missed two consecutive payments on the loan, and defendant made repossession arrangements with Carolina Repossessions. At approximately 4:00 a.m. on 29 July 2002, employees of Carolina Repossessions, Roger Pinkham and his brother, arrived at plaintiff's residence and began to hitch plaintiff's pick-up truck to their tow truck. Plaintiff heard them and went outside to investigate. When she requested to see the paperwork related to the repossession, one of the men briefly showed it to her.

Plaintiff explained to Pinkham that she was not contesting the repossession of the truck, but that she was concerned about the 130 watermelons in the truck bed. She had purchased and loaded them into the truck on the previous day and had planned to drive them to Maryland for re-sale. In addition to the watermelons, the truck also contained some other personal items belonging to plaintiff, including a coat, an ice chest, and some children's toys. Plaintiff asked Pinkham if she could unload her melons and other personal property before he towed the truck. Pinkham refused, telling her he was in a hurry because he had to get to his regular job. Pinkham also refused to allow plaintiff to deliver the truck herself later that morning after she had had time to unload the melons.

Plaintiff called defendant's office at about 8:00 a.m. the same morning and spoke to defendant's employee, Joyce White. When plaintiff asked White if she could retrieve her watermelons out of the repossessed truck, White replied, "What truck?" Fearing that the melons would quickly spoil in the summer heat, plaintiff, on the same day, filed a complaint alleging conversion in the Hertford County Small Claims Court.

Defendant's evidence tended to show that on Wednesday, 31 July 2002, two days after the repossession, one of defendant's employees called plaintiff and asked her to bring her truck key to defendant's office, but plaintiff refused. White testified that it was not defendant's practice to allow public access to the lot where repossessed items were kept; rather, defendant usually sent an employee to the lot to

gather up personal property left in repossessed vehicles and bring it to defendant's office for the owners to collect. White noted that plaintiff's load of watermelons created an unusual situation, and defendant had asked plaintiff to furnish her truck keys so that defendant could drive the truck to its office and allow plaintiff to unload it there.

Defendant then mailed plaintiff a letter, stating, "The watermelons are rotting and the smell is polluting the storage lot. If something is not done with them by 12:00 p.m., Friday, August 2, 2002, we will have to hire someone to dispose of them for us and the fee will be charged to your account." Although the post office attempted to deliver this letter to plaintiff, she never received it, and it was later returned to defendant's office.

On Thursday, 1 August 2002, the day after defendant mailed the letter, defendant called plaintiff again and asked her to come retrieve her watermelons from the repossessed truck because they were spoiling and creating a mess. Plaintiff informed defendant that since the melons were rotten, she no longer wanted them.

The small claims court dismissed plaintiff's conversion claim in a judgment dated 19 August 2002. Plaintiff filed a timely appeal to the Hertford County District Court. Following a bench trial, the district court entered an order on 12 November 2003, concluding that defendant had converted plaintiff's property and committed an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1. The order awarded damages in the amount of $455.00, the value of the watermelons. These damages were then trebled in accordance with North Carolina's unfair and deceptive trade practice statute, N.C. Gen. Stat. § 75-16 (2003), for a total liability of $1,365.00. The court also awarded plaintiff $1,562.50 in attorneys' fees, under N.C. Gen. Stat. § 75-16.1 (2003). Defendant has appealed to this Court.

I

[1] " 'Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner.' " *Estate of Graham v. Morrison*, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005) (quoting *Di Frega v. Pugliese*, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004)). "[C]onversion may occur when a valid repossession of collateral results in an incidental taking of other property, *unless* the loan agreement includes the debtor's consent to the incidental taking." *Clark v. Auto Recovery Bureau*

*Conn., Inc.*, 889 F. Supp. 543, 548 (D. Conn. 1994); *see also Rea v. Universal C. I. T. Credit Corp.*, 257 N.C. 639, 642, 127 S.E.2d 225, 228 (1962) (holding that plaintiff was entitled to a new trial on his conversion claim when the trial court failed to submit to the jury the question whether, at the time of repossession, plaintiff's car contained tools belonging to plaintiff); *Kitchen v. Wachovia Bank & Trust Co., N.A.*, 44 N.C. App. 332, 334, 260 S.E.2d 772, 773 (1979) (denying a lender's motion for summary judgment on the issue of conversion when the lender repossessed plaintiff's mobile home containing some of her personal property in which the lender did not have a security interest).

Defendant in this case contends that there was no unauthorized assumption and exercise of the right of ownership over the watermelons to the exclusion of the rights of the true owner. In support of this contention, defendant asserts (1) that plaintiff had an opportunity to remove the watermelons before the repossession and (2) that the loss of the watermelons was due to plaintiff's subsequent failure to supply defendant with her truck key.

With regard to the first assertion, defendant argues that there is no competent evidence to support the trial court's finding that defendant's agent, Carolina Repossessions, failed to give plaintiff "a reasonable amount of time to unload her watermelons during the repossession." We disagree. Plaintiff testified specifically that she requested an opportunity to remove her melons from the truck at the time of repossession and that her request was refused. Also, plaintiff's brother testified as follows:

A. . . . . I got up and went to the door, and [plaintiff] was talking to two men, and one of them was starting hooking up the truck, and I asked her what they were doing. She said, "They came to get the truck." I said, "Well, are they gonna let you get the watermelons off?" and while she was standing talking to them, I went back to get dressed to come back, and when I got back out there they had the truck loaded up going down the lane throwing the watermelons all in the lane. That's when I told her to call the police department and see if they knew anything about it.

Q. How long would you say it took you to go back and get dressed and come back out?

A. Two to three minutes. . . .

. . . .

Q. What did—what did Ms. Eley say when you came back and—and asked her about the watermelons?

A. She said they'd got—they'd gone on down the lane, and that's when I told her to call the police. They were supposed to give you time to get your property out of there.

Even Mr. Pinkham, one of the repossessors, testified that "when I got the truck turned around to leave, [plaintiff] did say that she wanted to get her belongings out of the truck, and I told her that if she wanted to get her belongings she needed to go ahead and get them because I did have to get back to Washington, and after about 15 minutes of being there, I figured that had been enough time for her to get the belongings, so I left. I did have other things to do, and so I pulled out."

The record thus contains competent evidence allowing the trial court to find that plaintiff was not allowed a reasonable time to unload her 130 watermelons. Although it is arguable that the record might also support a finding that plaintiff did have time to unload her melons, but failed to do so, the trial court's finding of fact otherwise is supported by ample evidence and is, therefore, binding on appeal. *Hensgen*, 53 N.C. App. at 335, 280 S.E.2d at 769.

[2] With regard to defendant's second assertion regarding plaintiff's failure to give defendant her truck keys, the trial court made the following pertinent findings of fact:

9. Ms. Eley contacted Ms. White, of Mid-East Acceptance, on the morning of July 29, 2003 to inquire as to the location of her truck so she could retrieve her watermelons. Ms. White's reply was "What truck?"

10. Mid-East Acceptance was the bailee of Ms. Eley's personal property and had an obligation to protect this collateral from harm.

11. When Mid-East Acceptance contacted Ms. Eley on Juy [sic] 31st to tell her where her truck was located the watermelons were already decomposing.

12. Mid-East Acceptance placed a condition on the return of Ms. Eley's property by requiring her to bring them the vehicle ignition key prior to that return.

Since defendant has not assigned error to these findings of fact, they are binding on this Court. *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). These findings of fact establish that the loss was not due to plaintiff's failure to deliver the truck key because the request for the key came too late to preserve the watermelons.

Taken together, all of these facts combine to support the inference that defendant assumed and exercised the right of ownership over plaintiff's watermelons without her permission, to the exclusion of her own rightful ownership interest. More colloquially, as plaintiff put it, "It was too hot. The melons was already there a week. The melons were spoiled. They wouldn't do me any good. They were their melons. They took the truck, they took the melons. They were their melons then." The trial court, therefore, did not err in entering judgment in favor of plaintiff on her claim for conversion.

II

**[3]** Defendant next contends that the trial court erred by concluding that defendant's actions amounted to an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1. A practice violates N.C. Gen. Stat. § 75-1.1 if it is " '(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs.' " *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 533, 551 S.E.2d 546, 552 (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000)), *disc. review denied*, 354 N.C. 363, 557 S.E.2d 538 (2001). Defendant argues only that plaintiff failed to prove the first element: the existence of an unfair or deceptive act or practice.

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Also, " '[a] party is guilty of an unfair act or practice when it engages in conduct [that] amounts to an inequitable assertion of its power or position.' " *Lake Mary Ltd. P'ship*, 145 N.C. App. at 533, 551 S.E.2d at 553 (quoting *Johnson v. Ins. Co.*, 300 N.C. 247, 264, 266 S.E.2d 610, 622 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988)). Although "whether a practice is unfair or deceptive is . . . dependent upon the facts of each case," *Moretz v. Miller*, 126 N.C. App. 514, 518, 486 S.E.2d 85, 88, *disc. review denied*, 347 N.C. 137, 492 S.E.2d 24 (1997), "[t]he determination of whether an act or practice is an unfair or

deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." *Gray*, 352 N.C. at 68, 529 S.E.2d at 681.

Here, the trial court entered an explicit finding of fact stating that "[e]mployees of Mid-East Acceptance used their relative position of power to deprive the Plaintiff of her personal property." Defendant argues that this finding is unsupported by competent evidence. We disagree because we find ample support in the trial court's other, unchallenged findings of fact as well as in the evidence admitted at trial. *See Lake Mary Ltd. P'ship*, 145 N.C. App. at 532, 551 S.E.2d at 553.

The trial court found and evidence supports that (1) two men appeared at the female plaintiff's house at 4:05 a.m. with a tow truck and hauled away her truck without giving plaintiff a reasonable time to unload her 130 watermelons; (2) following the repossession, when plaintiff contacted defendant to inquire as to the location of her truck so she could retrieve her watermelons, defendant denied knowledge of the truck; (3) defendant was unresponsive to plaintiff's inquiries about her watermelons; (4) defendant only offered to give plaintiff access to the truck—by requesting her truck key—*after* the watermelons were already rotting and of no value; and (5) defendant has never compensated, nor offered to compensate, plaintiff for the converted property. These unchallenged findings of fact, taken together, are such as "a reasonable mind might accept as adequate" to support the finding that the defendant deprived plaintiff of her property by means of inequitably asserting its relative position of power. *Andrews*, 120 N.C. App. at 605, 463 S.E.2d at 427. Therefore, we are unpersuaded by defendant's contention that no competent evidence supports this finding.

Further, this Court has already held that comparable findings are sufficient to establish an unfair and deceptive trade practice. *See Love v. Pressley*, 34 N.C. App. 503, 516-17, 239 S.E.2d 574, 583 (1977) (holding that the evidence supported the existence of an unfair and deceptive trade practice when (1) a landlord converted plaintiffs' personal property while cleaning the apartment for re-leasing, even though the lease had not yet expired; and (2) the landlord refused to respond to the plaintiffs' inquiries about the property), *disc. review denied*, 294 N.C. 441, 241 S.E.2d 843 (1978). Under the circumstances of this case—involving perishable goods, defendant's denial of any realistic opportunity to remove the goods, and defendant's failure to respond to plaintiff's prompt inquiries—the trial court properly held defendant liable under N.C. Gen. Stat. § 75-1.1.

III

[4] The trial court awarded damages to plaintiff in the amount of $455.00 on her conversion claim, an amount that reflects the trial court's finding that plaintiff's truck bed contained approximately 130 watermelons valued at $3.50 each. Defendant challenges this award on the ground that there was insufficient evidence of the value of the watermelons. Specifically, defendant contends that plaintiff's oral testimony as to the value of the watermelons is "not even adequate in the most basic business setting, and is woefully inadequate in a court of law." To the contrary, it is well-settled in this state that "the opinion of a property owner is *competent evidence* as to the value of such property." *Compton v. Kirby*, 157 N.C. App. 1, 18, 577 S.E.2d 905, 916 (2003) (emphasis added) (finding that competent evidence supported a finding that plaintiff's allegedly converted partnership interest was worth over $50,000.00 when plaintiff sent defendant a letter to that effect).

Here, when asked how much she had paid for the watermelons, plaintiff opined, "About $3.50 apiece." In accordance with *Compton*, this testimony is sufficient to support the trial court's calculation of plaintiff's damages. Moreover, since we have upheld the trial court's conclusion that defendant committed an unfair and deceptive trade practice under Chapter 75, we also affirm the trebling of the $455.00 to $1,365.00 in accordance with N.C. Gen. Stat. § 75-16.[1]

Defendant also challenges the trial court's award of attorneys' fees under N.C. Gen. Stat. § 75-16.1. Defendant offers no argument as to why the award in this case is improper apart from its contention that plaintiff was not entitled to recover under N.C. Gen. Stat. § 75-1.1. We, therefore, affirm the trial court's attorneys' fee award.

[5] Plaintiff has filed a motion for attorneys' fees incurred during this appeal. This Court has previously held that: "Upon a finding that

1. Plaintiff cross-assigned error to the trial court's award of damages, arguing that the price of $3.50 per melon was too low and did not reflect the market value of the watermelons. Plaintiff did not, however, file an appellant's brief on this issue, but rather included her discussion in her appellee's brief. Because this argument is not an alternative basis for upholding the trial court's order, N.C.R. App. P. 10(d), but rather asks this Court to reverse the order in part, plaintiff was required to file a separate appellant's brief. Plaintiff's assignment of error is not, therefore, properly before this Court. *See Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 117, 314 S.E.2d 775, 781 (1984) ("Because plaintiff's cross-assignment of error does not present an alternative basis upon which to support the judgment, the question argued therein is not properly before this court. The proper method to have preserved this issue for review would have been a cross-appeal. Plaintiff's cross-assignment of error is overruled.").

MOOSE v. VERSAILLES CONDO. ASS'N

[171 N.C. App. 377 (2005)]

[appellees] were entitled to attorney's fees in obtaining their judgment [under N.C. Gen. Stat. § 75-16.1], any effort by [appellees] to protect that judgment should likewise entitle them to attorney's fees." *City Fin. Co. of Goldsboro, Inc. v. Boykin,* 86 N.C. App. 446, 449, 358 S.E.2d 83, 85 (1987). Accordingly, because plaintiff was entitled to attorneys' fees for hours expended at the trial level, we hold plaintiff is entitled to attorneys' fees on appeal, especially in light of the limited amount of money at issue in the litigation. *Id.* at 450, 358 S.E.2d at 85 (noting that because the damages amounted to only $500.00, defense of the judgment would not be "economically feasible" in the absence of an award of attorneys' fees). We remand to the trial court for a determination of the hours spent on appeal and a reasonable hourly rate and for the entry of an appropriate attorneys' fee award.

Affirmed and remanded.

Judges McGEE and TYSON concur.