**STATE v. TALBERT**

[221 N.C. App. 650 (2012)]

STATE OF NORTH CAROLINA v. DAVID ELDON TALBERT

No. COA12-240

(Filed 17 July 2012)

## Probation and Parole—violation—approved residence— not willful

The trial court abused its discretion in a probation revocation case by finding that defendant had willfully violated the terms of his probation by failing to supply an approved residence. Defendant was unable to obtain suitable housing before his release from incarceration because of circumstances beyond his control.

Appeal pursuant to writ of certiorari by defendant from judgment entered 3 November 2011 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 21 May 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Phyllis A. Turner, for the State.*

*Daniel F. Read for defendant.*

ELMORE, Judge.

David Eldon Talbert (defendant) appeals from a judgment and commitment revoking his probation and activating his sentence. We reverse the judgment because defendant did not willfully violate the terms of his probation.

On 20 September 2010, defendant pled guilty to one count of felony failure to register as a sex offender. The trial court imposed an intermediate punishment, sentencing defendant as a Level III offender to a term of 19 to 23 months. The sentence was suspended, and defendant was placed on supervised probation for 24 months, subject to several special conditions of probation, including that defendant "abide by all terms of the sex offender control program." The first special condition of the sex offender control program, as set out by the Division of Community Corrections (DCC), is that defendant "[r]eside at a residence to be approved by the supervising officer."

On 4 October 2010, defendant was also convicted of felony larceny after breaking and entering in Yancey County. He received an active sentence of ten to twelve months' imprisonment. He was scheduled to be released from prison on 29 April 2011. That day, defendant's probation officer met defendant in prison. However,

STATE v. TALBERT

[221 N.C. App. 650 (2012)]

defendant had not yet obtained a place to live following his release. While still in prison, defendant had worked with his case worker to find a place to live, but they had been unsuccessful. Defendant could not stay with family members because he was adopted but had been removed from his adoptive family's care at the age of 15 because of physical and sexual abuse. He also had no money, as indicated by his affidavit of indigency. In addition, the probation officer explained, it is sometimes difficult for convicted sex offenders to find residences after they are released from prison because they cannot live near schools or daycares and "just the fact that they are a sex offender limits their possibilities of having a residence." Although defendant contacted several shelters and rescue missions, they all turned him down because he was a convicted sex offender.

On 29 April 2011, before he was released from jail or ever "touched outside," defendant's probation officer filed a violation report and took defendant into custody for violating the terms of his probation. The violation report asserted: "[D]efendant has willfully violated sex offender special condition no. 1 that he reside at a residence to be approved by the supervising officer, in that as of 4/29/11, [defendant] doesn't have an approved residence." Defendant professed to both his probation officer and his attorney that he would be willing to live on the streets and provide his probation officer with coordinates, and his attorney even proposed that "the sidewalk out in front of the federal courthouse" could be a suitable residence. However, the probation officer opined that, pursuant to DCC policy, registered sex offenders cannot live on the streets while they are on probation; being homeless is not a "suitable residence."

At the hearing, defendant's attorney asked the court to give his client 24 or 48 hours to find a suitable residence, explaining:

> It seems just illogical, I suppose, to allow an individual to be released from DOC custody, but at the very moment he is to be released from DOC custody, and find an appropriate place to reside, that you take him into custody and put him in the Buncombe County Detention Facility where the opportunities to make phone calls and contact individuals, including shelters, is basically nil. He just doesn't have this opportunity to get out there and find a place to stay.

Defendant's probation officer recommended revocation because he did not believe that defendant would be able to find a suitable residence: "I don't see anything else we can offer the gentleman. I mean,

he's given us residences. We've checked them out. And I just don't see any light at the end of the tunnel, Your Honor." Though defense counsel asked that defendant be released for 24 or 48 hours to call friends and ask if he could stay with them, which he had been unable to do while incarcerated, the trial court revoked defendant's probation and activated his sentence. The trial court found that defendant had willfully violated the terms of his probation, "without valid excuse," by failing to find a suitable residence.

Defendant now appeals, pursuant to a petition for writ of certiorari, which we grant. Defendant argues that his failure to find a suitable residence was not a willful violation of his probation. He argues that he had no "meaningful opportunity" to find a residence while he was incarcerated. Defendant also points to N.C. Gen. Stat. § 14-208.7, which requires a registered sex offender to register his address within three business days of his release from a penal institution. N.C. Gen. Stat. § 14-208.7 (2011). Defendant contends that he was entitled to this three-day period to find a suitable residence before having his probation revoked, arguing that the DCC policy of requiring an offender to obtain a suitable residence *before* he is released "impos[es] a penalty the legislature did not envision."

We first address whether defendant's violation was willful and hold that it was not and that the trial court erred by so finding. Because we reverse on the basis that the trial court erred by finding that defendant's violation was willful, we do not reach defendant's argument that DCC's policy is incompatible with N.C. Gen. Stat. § 14-208.7.

We review a trial court's decision to revoke probation only for "manifest abuse of discretion." *State v. Tennant*, 141 N.C. App. 524, 526, 540 S.E.2d 807, 808 (2000) (quotation and citation omitted). To revoke a defendant's probation, the trial court need only find that the defendant has "willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended." *State v. Hewett*, 270 N.C. 348, 353, 154 S.E.2d 476, 480 (1967). "Additionally, once the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms." *State v. Terry*, 149 N.C. App. 434, 437-38, 562 S.E.2d 537, 540 (2002) (citation omitted). "If the trial court is then reasonably satisfied that the defendant has violated a condition upon which a prior sentence was suspended, it may within its sound discretion

revoke the probation." *Id.* at 438, 562 S.E.2d at 540 (citation omitted). Though trial judges have discretion in probation proceedings, that discretion " 'implies conscientious judgment, not arbitrary or willful action. It takes account of the law and the particular circumstances of the case, and is directed by the reason and conscience of the judge as to a just result.' " *State v. Hill,* 132 N.C. App. 209, 212, 510 S.E.2d 413, 415 (1999) (quoting *State v. Duncan,* 270 N.C. 241, 245, 154 S.E.2d 53, 57 (1967)). Thus, "fairness dictates that in some instances a defendant's probation should not be revoked because of circumstances beyond his control." *Id.*

Here, defendant's probation was revoked because of circumstances beyond his control. Evidence presented at the hearing showed that defendant's lack of personal resources—social, familial, and financial—severely limited his ability to obtain a suitable residence while incarcerated. According to the State, the special condition that defendant "[r]eside at a residence to be approved by the supervising officer" is a pre-condition to release, and any failure to satisfy this pre-condition results in probation revocation. This interpretation resulted in the odd situation here, that defendant did not "reside" at an approved residence even though his residence was prison and he never "touched outside." The State asserts that defendant "exerted minimal effort" to satisfy this condition; we cannot agree. At ten, defendant was adopted into a sexually abusive family from which he was removed when he was a teenager. He then lived in foster care until he turned 21, staying in the foster system for three additional years because of a mental illness. This situation obviously limited his ability to stay with family until he found a more permanent residence. As indicated by his affidavit of indigency, defendant had no assets and no job, which alone presents a very real obstacle to renting a hotel room or apartment. Because he is a sex offender, defendant could not stay in the shelters and missions he contacted; because many shelters and missions either house children or have children's programs, it was unlikely that contacting additional shelters or missions would have produced a different result. Defendant was willing to live on the streets, reporting his coordinates to his probation officer, even living on the "steps of the federal courthouse"; however, according to DCC, homelessness would not satisfy the suitable residence requirement, though the State has not pointed to any authority or internal rules to support this stance. Despite the State's suggestion to the contrary, defendant's ability to communicate with friends or potential employers from inside prison was not unfettered. Although the statutes permit an offender to serve a term of probation

concurrently with a term of incarceration, *see* N.C. Gen. Stat. § 15A-1346(b) (2011), offenders who are incarcerated do not have the same opportunities to satisfy certain terms of their probation as offenders who are not incarcerated. They have limited means with which to investigate and contact prospective residences. In addition, registered sex offenders are quite limited by residency restrictions. *See* N.C. Gen. Stat. § 14-208.16 (2011) (setting out residential restrictions); *see also* N.C. Gen. Stat. § 14-208.18 (2011) (setting out locations at which registered sex offenders cannot "knowingly be"). The trial court heard all of this evidence at the hearing, and it abused its discretion by concluding that defendant's failure to secure suitable housing before his release was willful. Accordingly, we reverse the judgment revoking defendant's probation and activating his sentence.

Vacated.

Chief Judge MARTIN and Judge HUNTER, JR., Robert N., concur.