An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1001

Filed 3 June 2026

Forsyth County, No. 25CR000278-330

STATE OF NORTH CAROLINA

v.

JERRY EUGENE HONAKER, Defendant.

Appeal by Defendant from judgment entered 28 April 2025 by Judge Aaron Jay Berlin in Forsyth County Superior Court. Heard in the Court of Appeals 24 March 2026.

>*Attorney General Jeff Jackson, by Assistant Attorney General Tyler W. Smith, for the State.*

>*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for Defendant.*

GRIFFIN, Judge.

Defendant Jerry Eugene Honaker appeals the trial court's judgment revoking his probation, arguing the State presented insufficient evidence that Defendant absconded. We hold the trial court did not abuse its discretion by revoking Defendant's probation.

## I. Factual and Procedural History

Defendant, a resident of Forsyth County, was found to have willfully violated the terms and conditions of probation on 28 April 2025. During the violation hearing, the State introduced evidence that tended to show the following:

Defendant pled guilty to possession of methamphetamine and fleeing to allude arrest on 26 January 2024 in Davie County pursuant to *Alford*. Under the terms of the plea arrangement, the court sentenced Defendant to eight to nineteen months in the North Carolina Department of Adult Corrections. The sentence was suspended for twenty-four months on conditions, which in relevant part included, "[D]efendant shall . . . (6) [n]ot abscond, by willfully avoiding supervision or by willfully making [D]efendant's whereabouts unknown to the supervising probation officer."

On 6 February 2025, Defendant's probation officer, Laura Clark, filed a violation report in Forsyth County, alleging three violations. The first violation alleged failure to "[r]eport as directed by the [trial court], Commission or the supervising officer to the officer at reasonable times and places" because Defendant failed to report to Officer Clark on 6 and 27 January 2025; Officer Clark was unable to locate Defendant at Defendant's provided address on 14, 18, and 24 January 2025; Officer Clark was unable to contact Defendant at Defendant's provided phone number; and Officer Clark made contact with Defendant's sister who had filed a missing person's report on Defendant. The second violation alleged Defendant faield to "pay to the Clerk of Superior Court the 'Total Amount Due' as directed by the [trial

court] or probation officer." The third violation alleged Defendant failed to "[r]emain gainfully and suitably employed or faithfully pursue a course of study or vocational training that will equip [D]efendant for suitable employment." The trial court issued an order for arrest against Defendant on 6 February 2026. Officer Clark then sought assistance from the Apprehension Capture Enforcement (ACE) team's Officer Heather Bowden.

On 11 February 2025, ACE searched for Defendant at City of Dwellings community center and other homeless shelters. On 17 February 2025, Officer Bowden attempted to contact Defendant's girlfriend by phone. The following day, ACE attempted to visit Defendant's sister. On 19 February 2025, ACE unsuccessfully attempted contact with Defendant by phone. ACE successfully contacted Defendant's sister who claimed Defendant was seeking admission to the Addiction Recovery Care Association (ARCA). ACE's team chief called ARCA, who refused to provide information regarding Defendant. ACE made a final attempt to visit Defendant at his last known address, meeting the current resident who confirmed Defendant no longer lived at the property.

Officer Clark filed a violation report addendum on 24 February 2025 alleging Defendant "willfully violated" the condition "[n]ot to abscond by willfully avoiding supervision or by making the supervisee's whereabouts unknown to the supervising probation officer" because Defendant had not contacted Officer Clark since 4 December 2024; Officer Clark was unable to contact Defendant by phone on 17 and

19 February 2025; and Officer Clark was unable to locate Defendant at any of his known addresses. The violation also alleged Officer Clark unsuccessfully attempted to locate Defendant by conducting jail record checks.

Defendant turned himself in on 3 March 2025. While in custody, Defendant provided a letter to Officer Bowden confirming Defendant had been seeking treatment at ARCA for two weeks. The magistrate issued a written promise to appear, and Defendant was released from custody. Defendant informed Officer Clark he was living in a tent at Bolton Park. Accordingly, Officer Clark and Defendant arranged a meeting at Bolton Park on 9 April 2025.

When Officer Clark arrived at Bolton Park, she was unable to locate Defendant or establish contact by phone. Defendant texted Officer Clark on 13 April 2025 to inform her that Defendant had a new phone number and would meet Officer Clark at his tent in Bolton Park the next day. Defendant never arrived. Defendant called Officer Clark and asked to move the meeting to 15 April 2025. Officer Clark declined, stating she "would see him in court[.]"

At the close of the State's evidence at the violation hearing, Defendant elected to testify. Defendant stated he was actively seeking substance abuse treatment and housing during the time of the alleged absconding. Specifically, Defendant testified, on 11 February 2025, he underwent an assessment from the Creative Counseling and Wellness Corporation who referred Defendant to ARCA. During cross-examination, Defendant admitted to failing to communicate with Officer Clark on multiple

occasions. At the close of all evidence, the trial court found Defendant willfully violated the terms and conditions of his probation, incorporating the violation report and the addendum violation report in finding 3 as conditions violated, and activated his suspended sentence. Defendant orally appealed.

## II. Analysis

Defendant argues the trial court abused its discretion by revoking Defendant's probation because Defendant demonstrated, during the time of his alleged absconding, he was actively seeking treatment at ARCA.

"The findings of [a] judge, if supported by competent evidence, and his judgment based thereon are not reviewable on appeal, unless there is a manifest abuse of discretion." *State v. Guffey*, 253 N.C. 43, 45, 116 S.E.2d 148, 150 (1960) (citations omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Chukwu*, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916 (2013) (quoting *Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368, 369, 614 S.E.2d 555, 558 (2005)). Under abuse of discretion review, the trial court's judgment will not be disturbed absent a decision that "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (citation and marks omitted).

The trial court may revoke probation if it finds a criminal defendant has absconded by "willfully avoiding supervision or by willfully making [their]

whereabouts unknown to the supervising probation officer" without lawful excuse. N.C. Gen. Stat. §§ 15A-1343(b)(3a), 1344(a) (2025). The State bears the burden of proving the defendant willfully absconded and need not do so beyond a reasonable doubt. *State v. Seagraves*, 266 N.C. 112, 113, 145 S.E.2d 327, 329 (1965); *State v. Robinson*, 248 N.C. 282, 285, 103 S.E.2d 376, 379 (1958). The State need only demonstrate that the evidence "be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has violated a valid condition upon which the sentence was suspended." *Robinson*, 248 N.C. at 285–86, 103 S.E.2d at 379. If the State meets its burden, the defendant must then "demonstrate through competent evidence his inability to comply with the terms" of his probation to show his noncompliance was not willful. *State v. Talbert*, 221 N.C. App. 650, 652, 727 S.E.2d 908, 910–11 (2012) (quoting *State v. Terry,* 149 N.C. App. 434, 437–38, 562 S.E.2d 537, 540 (2002)).

In *State v. Crompton*, the defendant's probation officer filed several violation reports, including a report alleging the defendant had willfully absconded. 270 N.C. App. 439, 441, 842 S.E.2d 106, 109 (2020). At the violation hearing, the probation officer testified he was unable to contact the defendant by phone or by visiting the defendant's verified address on multiple occasions. *Id.* at 441, 842 S.E.2d at 109. The officer also alleged the defendant failed to report for scheduled appointments. *Id.* At the close of all evidence, the trial court revoked the defendant's probation. *Id.* On appeal, this Court held the probation officer "exhausted all available avenues" when

attempting to contact the defendant. *Id.* at 448, 842 S.E.2d at 113. Accordingly, this Court further held the trial court did not abuse its discretion when revoking the defendant's probation. *Id.* at 449, 842 S.E.2d at 114.

Here, Defendant argues the State did not prove Defendant willfully absconded by sufficient evidence. Accordingly, Defendant argues the trial court abused its discretion by revoking Defendant's probation pursuant to insufficient evidence.

The facts of this case are substantially similar to those in *Crompton*. Officers Clark and Bowden made multiple attempts to contact Defendant to no avail. The probation officers attempted to contact Defendant by phone at multiple different phone numbers, attempted to visit Defendant at his verified addresses, and visited Defendant's sister to attempt to establish contact with Defendant. When Officer Clark was finally able to establish contact with Defendant at Bolton Park, Defendant failed to keep multiple appointments and failed to maintain contact by phone.

The State, having shown each of these failures, sufficiently proved that Officer Clark had "exhausted all available avenues" to contact Defendant. *See id.* at 448, 842 S.E.2d at 113. The cumulative effect of these failures would reasonably lead the trial court to find Defendant willfully avoided supervision by Officer Clark and would be grounds to revoke Defendant's probation. *See Robinson*, 248 N.C. at 285–86, 103 S.E.2d at 379. Defendant's argument that he was seeking treatment does not absolve him of his inability to keep appropriate contact with Officer Clark during the time outside of the two weeks spent at ARCA. *See Talbert*, 221 N.C. App. at 652, 727

S.E.2d at 910–11. Therefore, the trial court did not abuse its discretion by revoking Defendant's probation for willfully absconding.

We note the trial court checked the box for finding 4, which states "[e]ach violation is, in and of itself, a sufficient basis upon which [the trial court] should revoke probation and activate the suspended sentence." "The court may only revoke probation for a violation of a condition of probation under G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), except as provided in G.S. 15A-1344(d2)." N.C. Gen. Stat. § 15A-1344(a). "Therefore, an offender must commit a criminal offense or abscond probation in order for a trial court to revoke probation if the [d]efendant has not been previously confined due to violations of probation." *State v. Mayfield*, --- N.C. App. ---, ---, --- S.E.2d ---, ---, 2026 WL 1235344, at *2 (N.C. Ct. App. May 6, 2026) (citing *State v. Hemingway*, 278 N.C. App. 538, 544, 863 S.E.2d 279, 283 (2021)). Here, the violation report included probation violations outside of the committal of a criminal offense or absconding in addition to the absconding violation. Thus, because "each violation" was not a "sufficient basis upon which [the trial court] should revoke probation and activate the suspended sentence," the trial court erred in checking box 4. *Id.* However, because we hold the trial court did not abuse its discretion in finding Defendant willfully absconded, we affirm the trial court's probation revocation because the trial court checked the box for finding 5a, revoking probation for absconding. *Id.* ("[W]hen this Court is 'able to ascertain that the trial court properly weighed the probation violations' and it is clear 'the revocation of Defendant's

probation was based upon [grounds listed in N.C. Gen. Stat. § 15A-1344(a)],' the trial court's judgment should be affirmed." (quoting *State v. Daniels*, 290 N.C. App. 443, 447, 893 S.E.2d 212, 215 (2023) (alteration in original)).

## III.    Conclusion

Based on the foregoing, we affirm the trial court's judgment revoking Defendant's probation as modified.

AFFIRMED AS MODIFIED.

Chief Judge DILLON and Judge WOOD concur.

Report per Rule 30(e).